IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANTIQUE C. JACKSON, | ) <br> ) <br> ) |
| *Plaintiff*, | ) <br> ) |
| v. | ) No. 20 C 1276 <br> ) |
| U.S. DEPARTMENT OF JUSTICE, | ) Judge Virginia M. Kendall <br> ) |
| *Defendant*. | ) <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Shantique Jackson, brings this suit against the Department of Justice ("Department"), seeking the production of records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Jackson was severely beaten by a Joliet Police Officer. The arrest and beating was recorded on tape. The officer was fired and charged both criminally and civilly although he was acquitted both times. Nevertheless, Jackson entered into a settlement agreement with the City of Joliet that provided her with over $675,000. She now seeks the videos from that arrest from ten years ago. The Defendant has turned over the videos in its possession. However, pursuant to its obligations, the Defendant has redacted the faces of third parties and other identifying information. Jackson objects to the turnover claiming that it fails to comply with FOIA's requirements. Before the Court is Defendant's motion for summary judgment. (Dkt. 30). For the following reasons, Defendant's motion is granted.

**BACKGROUND**

On February 9, 2012, Thomas O'Connor, a former police officer of the Joliet Police Department, brutally beat Shantique Jackson while attempting to arrest her in a parking lot. (Dkt.

1

1 at ¶ 6). O'Connor was terminated and charged with aggravated battery, battery, and official misconduct in Illinois state court. (*Id*. at ¶ 7). In June 2013, O'Connor was found not guilty. (*Id*.). A federal grand jury indicted O'Connor with violating Jackson's Fourth Amendment protections in September 2016, and O'Connor was found not guilty. (*Id*. at ¶ 8). Jackson brought a civil lawsuit against O'Connor and the City of Joliet under 42 U.S.C. § 1983, resulting in a settlement in 2014 with the City of Joliet. (Dkt. 31); *Jackson v. O'Connor et al.*, 13 CV 5017 (N.D. Ill.).

Following the conclusion of the criminal and civil cases, Jackson submitted a FOIA request with the Department of Justice. (Dkt. 32 at ¶ 1; Dkt. 33-1 at ¶ 1). On May 29, 2018, the Department of Justice received a FOIA request specifically for "any and all documents in relation to Case number #16CR579" and "any and all videos in relation to Case number #16CR579." (*Id*.). On September 12, 2018, the Department mailed a response letter to Jackson, informing her that the records were "categorically exempt from disclosure pursuant to FOIA exemptions (b)(6) and (b)(7)(C)." (Dkt. 32 at ¶ 2; Dkt. 33-1 at ¶ 2).

On February 21, 2020, Jackson filed the present complaint seeking to compel disclosure of the requested records by the Department under 5 U.S.C. § 552. (Dkt. 1). In the course of this litigation, Jackson narrowed her request to exclusively the videos related to Case number #16CR579. (Dkt. 32 at ¶ 4; Dkt. 33-1 at ¶ 4). The requested videos capture the violent attempted arrest of Jackson in the parking lot of a motel from four different angles. (Dkt. 32 at ¶ 5; Dkt. 33-1 at ¶ 5). The videos were compiled as part of the investigation and prosecution of Thomas O'Connor. (*Id*.).

On August 7, 2020, the Department referred the four videos to the Federal Bureau of Investigation ("FBI") for a release determination in order to respond to Jackson. (Dkt. 32 at ¶ 6; Dkt. 33-1 at ¶ 6). The FBI processed the videos with certain redactions for production to Jackson.

(Dkt. 32 at ¶ 8; Dkt. 33-1 at 8). In particular, the FBI covered the faces of third-party individuals and license plate information. (*Id.*). The redactions include the coverage of O'Connor's face along with other emergency personnel at the scene. (*Id.*).

On August 16, 2021, the Department of Justice filed a motion for summary judgment asserting all responsive records were produced. (Dkt. 31). In Jackson's response, she admitted to seven of the eight material facts put forward by the Department. (Dkt. 33-1). The singular fact is, "The FBI processed all referred videos to achieve maximum disclosure consistent with the access provisions of the FOIA." (Dkt. 32 at ¶ 7; Dkt. 33-1 at ¶ 7). The parties agree that the four videos in existence were produced to Jackson but disagree as to whether the videos in their redacted form fully respond to the request. (Dkt. 31; Dkt. 33). Before the Court is Defendant's motion for summary judgment. (Dkt. 31). For the following reasons, Defendant's motion is granted.

## **STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000).

Because disclosure is the "dominant objective" of the FOIA, the Court narrowly construes FOIA exemptions. *Patterson v. I.R.S.*, 56 F.3d 832, 835 (7th Cir. 1995); *Dep't of Interior v.*

3

*Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001). As such, the government agency has the burden to support its decision to deny the FOIA request. *Patterson*, 56 F.3d at 837. The Court may grant summary judgment in favor of the agency in a FOIA case "only if 'the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed.'" *Id*. (quoting *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993)). Summary judgment in a FOIA case is different from other civil cases because it does not turn only on the existence of genuine issues of material fact; instead, the inquiry is also whether the agency "fully discharged its obligations under the Act." *See, e.g., Fazzini v. Dep't of Justice*, No. 90 C 74649, 1991 WL 74649, at *3 (N.D.Ill. May 2, 1991)(Conlon, J.).

## **DISCUSSION**

The Department moves for summary judgment and asserts complete production of the requested records with maximum permissible disclosure. The Department claims the videos were properly redacted under FOIA exemptions 6 and 7(C) due to privacy concerns. FOIA Exemption 6 prevents the Department from having to disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). FOIA Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information…could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The policy goal behind FOIA is the "broad disclosure" of documents that illuminate for the public the workings of government. *Lakin Law Firm, P.C. v. F.T.C.*, 352 F.3d 1122, 1123 (7th Cir. 2003). However, statutory exemptions

4

such as Exemption 6 and Exemption 7(C) allow government agencies to reject information requests in the interest of protected privacy interests.

Exemption 7(C) provides broader privacy protections than Exemption 6. *U.S. Dep't of Justice v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 755–756 (1989). Therefore, the Court turns first to a review of the redactions under the more protective terms of Exemption 7(C). *See, e.g., Rimmer v. Holder*, 700 F.3d 246, 256 (6th Cir. 2012); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 854 F.3d 675, 681 (D.C. Cir. 2017). The initial question in applying Exemption 7(C) to a FOIA request is whether the records were compiled for "adjudicatory or enforcement purposes," which the Government has the burden of showing. *Patterson*, 56 F.3d at 837 (quoting *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984)). In the request at hand, the videos clearly meet this requirement as they were compiled for the purpose of investigating and ultimately prosecuting O'Connor.

When assessing how to apply Exemption 7(C) in a FOIA request, the Court is ultimately required to balance the privacy interests against the public interests related to the release of a record. *Reporters Comm.*, 489 U.S. at 762. Before reaching the balancing test, the first step of this inquiry is whether the basis of a privacy interest exists to invoke the exemption at all. *Higgs v. United States Park Police*, 933 F.3d 897, 904 (7th Cir. 2019). In *Higgs*, the district court's acknowledgement that at least some of the affected people were probably still alive met the threshold of showing a protected privacy interest. *Id*. The Seventh Circuit outlined in *Higgs* that once a preliminary protected privacy interest is shown by the government, before any balancing test is required, the burden shifts to the requesting party to assert a significant public interest. 944 F.3d at 904 ("So long as the government has shown enough of a protected privacy interest to invoke the exemption in the first place, the burden shifts to the person seeking disclosure to

5

demonstrate that there is some significant public interest that the court must balance against those privacy issues.").

Employing the analysis defined by the Seventh Circuit, this Court turns first to whether the government raised enough of a protected privacy interest to invoke the exemption. The videos were produced with the faces of individuals and license plate numbers redacted. Personally identifiable information within law enforcement records is protected under Exemption 7(C). *See, e.g.*, *Mingo v. U.S. Dep't of Justice*, 793 F. Supp. 2d 447, 453 (D.D.C. 2011); *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) ("[O]ur decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants."). Under Exemption 7(C), courts have upheld redaction of faces of third-party individuals in order to protect identifying information that could subject individuals to stigmatization, harassment, or physical harm. *See, e.g.*, *Skinner v. U.S. Dep't of Justice*, 806 F.Supp. 2d 105 (D.D.C. 2011) (protecting the face of a third-party individual from disclosure); *Showing Animals Respect and Kindness v. U.S. Dep't of Interior*, 730 F. Supp. 2d 180, 198 (D.D.C. 2010) ("Although [Defendants] have a lesser privacy interest in photographs that they voluntarily took, the Court finds that the public interest in showing their faces does not outweigh their privacy interest in protecting their own images."). In *Mingo*, the D.C. Circuit held the Bureau of Prisons ("BOP") properly withheld surveillance videos capturing the images of over fifty individuals since the BOP lacked the technical ability to redact the images and such images could lead to identification. *Mingo*, 793 F. Supp. 2d at 453–55. The same analysis applies to prevent disclosure of license plate numbers which could similarly result in identification of third-party individuals. *See, e.g., Banks v. Dep't of Justice*, 813 F. Supp. 2d 132, 143–44 (D.D.C. 2011).

Jackson focuses her argument on the claim that law enforcement officers conducting their duties in public cede any expectation of privacy. (Dkt. 33). Jackson relies on a Seventh Circuit case regarding the constitutionality of the Illinois eavesdropping statute. *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012). In *Alvarez*, the Court noted police officers performing their duties in public places lacked any "reasonable expectation of privacy" for purposes of the Fourth Amendment, and as such, privacy concerns were not at issue in relation to a plan by the ACLU to openly record such interactions. *Id*. at 605–06. The holding in *Alvarez* assessed the rights of private individuals to record the audio of police officers in public settings. *Id*. Alternatively, in a FOIA request, the privacy interest is understood in the context of the government's duty to disclose bureaucratic records, and therefore courts are required to apply the balancing test. *See Reporters Comm.*, 489 U.S. at 762. Exemption 7(C) protects the privacy interests of all persons included in law enforcement records. *See, e.g.*, *Schrecker*, 349 F.3d at 661.

*Alvarez* has never been applied to privacy interests in a FOIA request, and the Seventh Circuit has been careful in extending its reach in other contexts. In *Dahlstrom v. Sun-Times Media, LLC*, the court found a newspaper's publication of identifying information of Chicago police officers, obtained through a state FOIA request, was not protected by the holding in *Alvarez*. 777 F.3d 937 (7th Cir. 2015). "If a member of the press observed one of the Officers in public – for example, during a traffic stop – he could publish any information gleaned from that interaction." *Id*. at 948. However, the newspaper was not able, under the Driver's Privacy Protection Act, to publish materials arising from "peering into an individual's personal government records." *Id*. The holding in *Alvarez* does not bear on the case at hand, nor does it alter the analysis of privacy protections in FOIA requests under Exemption 7(C).

The Department flagged Jackson's claim that the original videos airing in open court during the trial would nullify any privacy interest, at least with respect to O'Connor, which Jackson did not raise in her Response. (Dkt. 31; Dkt. 33). Yet, previous disclosure does not nullify privacy interests. *Reporters Comm.*, 489 U.S. at 770 ("[T]he fact that an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information.") (internal quotation marks omitted); *Taylor v. U.S. Dep't of Justice*, 268 F. Supp. 2d 34, 38 (D.D.C. 2003) ("[T]he fact that the requestor might be able to figure out some or all of the individuals' identities through other means, or the fact that their identities have already been disclosed, does not diminish their privacy interests in not having the documents disclosed.") (quoting *Burke v. U.S. Dep't of Justice, et al.*, 1999 WL 1032814, *6 (D.D.C. 1999).

The privacy interest can only be waived by the individual whose interests are at stake, not the agency. *Reporters Comm.*, 489 U.S. at 763-65. Since the government cannot waive an individual's privacy rights, the introduction of records at trial by the government or failure to introduce such records under seal is irrelevant to waiver analysis. The Tenth Circuit resolved a case of disclosure in an open trial similarly. *See Prison Legal News v. Executive Office for U.S. Attorneys*, 628 F.3d 1243, 1249 (10th Cir. 2011). According to the same logic, an individual cannot be expected to object to such a disclosure in order to preserve privacy rights. *Prison Legal News*, 628 F.3d at 1249. In this case, the unredacted videos were shared in a limited context in a controlled environment when used as evidence in an open trial, which is markedly different from the invasion of privacy rights that would occur from unredacted disclosure to Jackson.

A preliminary protected privacy interest was raised by the government in this case, and the burden shifts to Jackson to assert a significant public interest. *Higgs*, 933 F.3d at 904. Jackson claimed the Department failed to raise a protected privacy interest and depended on this reasoning

8

as her basis for raising no public interests to balance. (Dkt. 33). The Seventh Circuit made clear that the failure to raise a public interest once the government has shown any protected privacy interest is dispositive. *Higgs*, 933 F.3d at 904 ("[I]f [the person seeking disclosure] did not meet his burden, there is no need to reach the more complex balancing test required for Exemption 7(C).").

In Jackson's original complaint, the basis for her request was "understanding how the DOJ prosecuted the case." (Dkt. 1 at ¶ 16). Jackson must show a significant public interest to overcome the privacy rights protected by Exemption 7(C). *Nat'l Archives and Records Admin v. Favish*, 541 U.S. 157, 172 (2004) ("Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest."). Jackson neglects to argue or demonstrate how inclusion of the faces and license plate numbers in the four videos is likely to advance her understanding of how the Department prosecuted the case against O'Connor. If Jackson is suspicious of improper conduct or negligence during the prosecution, she "must establish more than a bare suspicion in order to obtain disclosure . . .. the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id*. at 174. In *Higgs*, the Seventh Circuit held specifically that the requester's belief that "disclosure 'would reveal much about the diligence of the [agency's] investigation and the DOJ's exercise of its prosecutorial discretion'" was insufficient and reminiscent of past cases where the Seventh Circuit rejected vague public interest claims. *Higgs*, 933 F. 3d at 905 (referencing *Baker v. Federal Bureau of Investigation*, 863 F.3d 682, 684 (7th Cir.

9

2017) (interest in whether FBI assigned its best agents to a particular case was insufficient to overcome privacy rights)).

The Department in this case put forward a reasonable basis for privacy protections and the application of Exemption 7(C) to redact the faces and license plate numbers of third-party individuals. In response, Jackson failed to raise any public interest, much less a significant public interest to be balanced against the privacy interests of identifying information of third parties. Finally, Jackson reached a settlement in the matter of her abuse by the Joliet Police Officer over eight years ago. That officer was tried both criminally and civilly. She has failed to present any reason why the information she seeks now advances a public interest.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment [30] is granted.

Virginia M. Kendall
United States District Judge

Date: March 31, 2022